UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No. _____

STACY MILROT, Individually and on Behalf
of All Others Similarly Situated,

                          Plaintiff,

    vs.

APPLE INC., a California Corporation, and
AT&T INC., a Delaware Corporation,

                     Defendants.

_____ /

**COMPLAINT-CLASS ACTION**

**DEMAND FOR JURY TRIAL**

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff Stacy Milrot ("Plaintiff"), individually and on behalf of all others similarly situated, for her Class Action Complaint, hereby sues defendants Apple Inc. ("Apple") and AT&T Inc. ("AT&T") (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is a class action suit brought on behalf of Plaintiff and others similarly situated who purchased Apple's iPhone 4 (the "iPhone 4").

2.      Apple designed and manufactured, and both Apple and AT&T marketed, advertised, and warranted the iPhone 4 to consumers nationwide.  In conjunction with each sale, Defendants marketed, advertised and warranted that each iPhone 4 was fit for the ordinary purpose for which such goods are used and was free from defects in materials and workmanship.

3.      Defendants knew or should have known that the iPhone 4s were defective in design and/or manufacture, were not fit for their ordinary and intended use, and did not perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants.  In addition, Defendants knew or should have known that the iPhone 4s do not conform with the reasonable expectations of ordinary consumers.

4.      Specifically, the iPhone 4s contain a defect that results in the quick loss or reduction of cellular and wireless reception and performance when handling the phones as demonstrated in Apple's own advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other services provided by the iPhone 4.

5.      Defendants know and have admitted that the iPhone 4s  were defectively designed. Indeed, Apple Chairman and CEO Steve Jobs recently (and snidely) remarked, "Just avoid holding it in that way," and Apple has announced that the reception defect may be eliminated by the purchase – for another $29.00 – of a rubber "bumper" that wraps around the iPhone 4.

- 1 -

6.      As a result of the defect in the iPhone 4s, Plaintiff and the Class have suffered damages, in that they purchased and/or own iPhone 4s that they would not otherwise have bought and/or owned had they known of the defect, and they have been or will be forced to purchase additional accessories to be able to properly utilize the iPhone 4 for its intended purpose, and purchased and/or own iPhone 4s that are not worth the price paid.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the instant lawsuit pursuant to 28 U.S.C. §1332(a)(1) as modified by the Class Action Fairness Act of 2005, because the Plaintiff herein and the Defendants herein are citizens of different states, there are more than 100 members of the class and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of attorneys' fees, interest, and costs.

8.      Pursuant to 28 U.S.C. §1391(b), venue is proper in this district because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

9.      Plaintiff is a citizen and resident of the State of Florida.

10.      Defendant Apple is a California corporation with its headquarters and principal place of business in Cupertino, California.  Apple is the designer, manufacturer and creator of the iPhone 4.  Apple transacts substantial business throughout the State of Florida, through advertising, marketing, and the ownership of Apple Retail Stores in several Florida locations, including in this District, where many members of the Class purchased their iPhone 4s.

11.      Defendant AT&T is a Delaware corporation with its headquarters in Dallas, Texas. AT&T is an advertiser and distributor of the iPhone 4 and the exclusive provider of mobile telephone service to iPhone 4 users in the United States.  AT&T transacts substantial business

throughout the State of Florida, including in this District, and is authorized to conduct business in Florida.

## SUBSTANTIVE ALLEGATIONS COMMON TO ALL COUNTS

12.     Apple manufactures, designs, produces and sells several types of electronic products, including, among others, personal computers, portable music players, cellular phones, and other communication devices.   Among these products is the well-known iPhone, launched in 2007.

13.     AT&T sells mobile telephones throughout the nation, and is the exclusive provider of mobile telephone service to iPhone 4 purchasers in the United States.

14.     On June 7, 2010, at Apple's Worldwide Developers Conference ("WWDC"), Apple announced that its newest version of the iPhone – the iPhone 4 – would be released beginning on June 24, 2010.

15.     On or about June 15, 2010, Plaintiff pre-ordered an iPhone 4 from AT&T from Broward County, Florida, in the Southern District of Florida.

16.     Plaintiff's iPhone 4 16GB – Serial Number 88025X2FA4S – arrived from AT&T on June 24, 2010.

17.     As part of the Plaintiff's iPhone 4 purchase, Plaintiff was also required to purchase a two-year service contract from AT&T.

18.     Prior to the release of the iPhone 4 devices, Defendants engaged in a lengthy and extensive global advertising campaign to market the iPhone 4.

19.     As part of that advertising and marketing campaign, Apple made multiple claims that its new device would have improved reception and provide improved service to consumers.

20.     Indeed, at the WWDC, Steve Jobs boasted about the new engineering miracle with the iPhone 4's antenna design, which now would hold the antenna around the outside of the device, as demonstrated in this photo of Jobs making his presentation at the WWDC:

- 3 -



21.      In many of Apple's text and video advertisements, individuals are shown experiencing strong reception and positive performance while holding the iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, thus making contact with the iPhone 4's antennas.

22.      To date, Apple has sold over 2 million iPhone 4 units, making it the most successful product launch ever for Apple, in terms of units sold.

23.      Nevertheless, almost immediately after the purchase of her iPhone 4, Plaintiff began to experience significantly reduced reception and performance when handling the phones as demonstrated in Apple's advertisements or as a reasonable person would handle a mobile telephone while making phone calls, browsing the Internet, sending text messages, or utilizing other services provided by the iPhone 4.

24.     Upon information and belief, Plaintiff's reception problems are not unique and that individuals across the country have experienced similar problems following their purchase of the iPhone 4.

25.     These problems are, without question, the result of the iPhone 4's defective design and/or manufacture.

26.     Indeed, it appears clear that both Defendants had actual or constructive knowledge of the iPhone 4's design and/or manufacturing defect(s) prior to its distribution.  This is evident by the fact that the "bumper" sold by Defendants to reduce the reception problems on the iPhone were made available – for $29 a pop[1] – nearly immediately after the iPhone 4 launch date, which look like the following picture:



---

[1]     *See* http://store.apple.com/us/product/APPLE_IPHONE_BUMPERS-104238?mco=MTgxNT gyMDY.

27.     As a direct result of the iPhone 4's design and/or manufacturing defect(s), Plaintiff has been unable to reliably use her iPhone 4 device for her intended purpose, and the device has not conformed to Plaintiff's expectations.

28.     For AT&T's part, as the exclusive provider of mobile telephone service to iPhone 4 owners in the United States, AT&T continues to sell the device and provide exclusive mobile telephone service to iPhone 4 users despite knowing that the iPhone 4 is defective.

29.     Incredibly, on the very day of the iPhone 4's launch, June 24, 2010, a new iPhone 4 owner e-mailed Steve Jobs, Chairman and CEO of Apple, expressing his concern over the iPhone 4's reception.  In the e-mail, titled "Your new antenna system doesn't like my hand," the iPhone 4 owner wrote "I love my new iPhone 4 [nice work] but when I put my hand on the steel bands I lose all reception.  It appears to be a common issue.  Any plans to fix this?"

30.     In response to this Class member's e-mail, Jobs responded with a curt "Just avoid holding it in that way."  According to Gizmodo.com, Jobs also reportedly responded to other complaining iPhone 4 users by stating that "it's not a big issue" and "You are in a marginal cell area. It has nothing to do with the phone."

31.     Despite Jobs' public denials, on June 29, 2010, Boy Genius Report, a Technology Blog/Website ("Boy Genius"), reported that AppleCare representatives were provided instruction by Defendant Apple on how to address callers complaining about iPhone 4 reception problems.

32.     Boy Genius also reported that Apple had instructed its representatives to inform iPhone 4 owners that "The iPhone 4's wireless performance is the best we have ever shipped."  And that "If you are experiencing [reduced reception] on your iPhone 4, avoid covering the black strip on the lower-left corner of the metal band."

33.     Further, Boy Genius reported that "The use of a case or Bumper that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering these areas."

34.     Despite Apple's apparent belief that the use of a case may remedy the inherent flaw in their iPhone 4 device, Boy Genius further reported, based on internal Apple communications, that "WE [APPLE] ARE NOT appeasing customers with free bumpers — DON'T promise a free bumper to customers."

35.     In addition, Boy Genius reported that, should an iPhone 4 customer complain about reception problems, Apple representatives are to specifically respond that "it is not the metal band."

36.     Shockingly, also according to Boy Genius, Apple instructed its employees that they were not to perform warranty service on the reception problems, telling them, "Do not perform warranty service."

37.     The actual AppleCare "talking points" discussed in the Boy Genius Report is demonstrated here:



1. Keep all of the positioning statements in the BN handy – your tone when delivering this information is important.
    a. The iPhone 4's wireless performance is the best we have ever shipped. Our testing shows that iPhone 4's overall antenna performance is better than iPhone 3GS.
    b. Gripping almost any mobile phone in certain places will reduce its reception. This is true of the iPhone 4, the iPhone 3GS, and many other phones we have tested. It is a fact of life in the wireless world.
    c. If you are experiencing this on your iPhone 3GS, avoid covering the bottom-right side with your hand.
    d. If you are experiencing this on your iPhone 4, avoid covering the black strip in the lower-left corner of the metal band.
    e. The use of a case or Bumper that is made out of rubber or plastic may improve wireless performance by keeping your hand from directly covering those areas.
2. Do not perform warranty service. Use the positioning above for any customer questions or concerns.
3. Don't forget YOU STILL NEED to probe and troubleshoot. If a customer calls about their reception while the phone is sitting on a table (not being held) it is not the metal band.
4. ONLY escalate if the issue exists when the phone is not hold AND you cannot resolve it.
5. We ARE NOT appeasing customers with free bumpers – DON'T promise a free bumper to customers.

38.     On June 30, 2010, AnandTech, Inc. ("AnandTech") published a story entitled, "The Real Story on iPhone 4's Antenna." This is what AnandTech found, *inter alia*:

(a)      as with all external antennas, the potential for both unintended attenuation and detuning is much, much greater;

(b)      anything conductive which bridges the gap in the bottom left [of the iPhone 4] couples the antennas together, detuning the precisely engineered antennas.  It's a problem of impedance matching with the body as an antenna, and the additional antenna that becomes part of the equation when you touch the bottom left;

(c)      The fact of the matter is that cupping the bottom left corner and making skin contact between the two antennas does result in a measurable difference in cellular reception;

(d)      Holding the iPhone 4 without a case, in your left hand, crossing the black strip can result in a worst case drop of 24 dB in signal;

(e)      Add in an external antenna you're essentially forced to touch and bridge to another adjacent antenna while holding, and the signal attenuation is even worse.  The fact of the matter is that either the most sensitive region of the antenna should have an insulative coating, or everyone should use a case.  For a company that uses style heavily as a selling point, the latter isn't an option.  And the former would require an unprecedented admission of fault on Apple's part; and

(f)      The drop in signal from holding the phone with your left hand arguably remains a problem.  Changing the bars visualization may indeed help mask it, and to be fair the phone works fine all the way down to -113 dBm, but it will persist – software updates can change physics as much as they can change hardware design.  At the end of the day, Apple should add an insulative coating to the stainless steel band, or subsidize bumper cases.  It's that simple.

## CLASS ACTION ALLEGATIONS

39.      Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated as members of the following class:

All persons in the United States who have purchased an Apple iPhone 4 (the "Class").

Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amendment or amended complaint. Specifically excluded from the proposed Class are the Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by the Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with the Defendants and/or their officers and/or directors, or any of them; the Judge assigned to this action, and any member of the Judge's immediate family.

40. **Numerosity**. The members of the Class are so numerous that their individual joinder is impracticable. Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contain many hundreds of thousands of members. The precise number of Class members is unknown to Plaintiff. The true number of Class members are known by the Defendants, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

41. **Existence and Predominance of Common Questions of Law and Fact**. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether Defendants were negligent in the design, manufacturing, and distribution of the iPhone 4;

(b) Whether the iPhone 4 designed, manufactured, marketed, distributed, or sold by Defendants was unfit for its intended purpose and use because of its design;

(c) Whether Defendants breached any warranties in selling the iPhone 4;

(d)     Whether Defendants intentionally or negligently misrepresented material facts relating to the character and quality of the iPhone 4; and

(e)     Whether Plaintiff and the Class are entitled to damages, and what is the proper measure of damages.

42.     ***Typicality***.  Plaintiff's claims are typical of the claims of the members of the Class in that the Defendants manufactured, sold, warranted, and marketed a defectively designed iPhone 4 to Plaintiff, like all other members of the Class.

43.     ***Adequacy of Representation***.  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

44.     ***Superiority***.  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the Defendants.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class members could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

45.     In the alternative, the Class may be also certified because:

    (a)    the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

    (b)    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

    (c)    Defendants have acted or refused to act on grounds generally applicable to the Class thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

46.    The claims asserted herein are applicable to all consumers throughout the United States who purchased the iPhone 4.

47.    Adequate notice can be given to Class members directly using information maintained in Defendants' records or through notice by publication.

48.    Damages may be calculated from the claims data maintained in Defendants' records, so that the cost of administering a recovery for the Class can be minimized.  However, the precise amount of damages available to Plaintiff and the other members of the Class is not a barrier to class certification.

## COUNT I

### Negligence
### (Against Apple and AT&T)

49.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

50.     By virtue of aforementioned acts of Defendants, Defendants in designing, manufacturing, marketing, and distributing the iPhone 4 had a duty to Plaintiff to do so in a reasonable manner and to ensure that the product was without defect.

51.     Defendants knew or reasonably should have known of the iPhone 4's defective nature prior to placing the iPhone 4 into the stream of commerce.

52.     Defendants breached their duty to Plaintiff by placing the defective product into the stream of commerce.

53.     As a direct and proximate result of Defendants' negligence, the defective iPhone 4 has caused economic injury to Plaintiff and all Class members.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.     Awarding damages sustained by Plaintiff and the Class as a result of Defendants' negligence;

C.     For pre- and post-judgment interest to the Class, as allowed by law;

D.     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.     Granting such other and further relief as is just and proper.

## COUNT II

### Defect in Design, Manufacture and Assembly
### (Against Apple)

54.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

55.     The iPhone 4s were not reasonably fit, suitable, or safe for their intended use by reason of a defect in their design, manufacture, or assembly, which caused them to not function properly as a cellular communication device.

56.     The defect in design, manufacture, or assembly existed at the time Apple placed the iPhone 4 units into the stream of commerce.

57.     The iPhone 4s were used in their intended manner when they failed to function properly and, as a result, have caused economic damage and harm to Plaintiff.

58.     As a direct and proximate result thereof, Plaintiff has been injured and damaged.

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.      Awarding damages sustained by Plaintiff and the Class as a result of Defendant's unlawful conduct;

C.      For pre- and post-judgment interest to the Class, as allowed by law;

D.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

E.      Granting such other and further relief as is just and proper.

## COUNT III

### Breach of Express Warranty
### (Against Apple)

59.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

60.     The advertisements, model and sample, and other similar uniform representations disseminated by Apple regarding the iPhone 4 were, and are, affirmations of fact and/or promises

with regard to the performance and quality of the product.  These advertisements, model and sample, and other similar representations, formed, in whole or in part, the basis of the bargain between Apple and members of the Class, and constituted express warranties that the iPhone 4 would conform thereto.  As described above, Class members' iPhone 4s did not conform with these warranties, representations, model and sample.

61.    Apple provided limited warranties to Plaintiff and other members of the Class, which Apple breached and failed to honor.  The time and content limitations contained in those limited warranties were also unconscionable and grossly inadequate to protect Plaintiff and the other members of the Class.   Among other things, Class members had no meaningful choice in determining those time and content limitations; the terms of the limited warranties unreasonably favored Apple over members of the Class; a gross disparity in bargaining power existed as between Apple and members of the Class; and Apple knew the iPhone 4s were defective and would fail to provide the promised cellular reception.

62.    By virtue of its knowledge of the defect and its knowledge of the experience of owners of the iPhone 4s who complained of the defect described herein, Apple has received notice of the breach of the warranties.

63.    The element of privity, if applicable, exists between Apple and members of the Class because, *inter alia*: (i) Apple has had direct written communications with members of the Class with regard to the iPhone 4s in the form of standardized warranty forms and registration cards; (ii) Apple has had direct communications with members of the Class with regard to the iPhone 4s through television, newspaper, and magazine advertisements; (iii) the Apple Retail Stores directly sold the iPhone 4s to the Class; and (iv) the AT&T dealers and AT&T's online website that have sold iPhone 4s to and communicated with Plaintiff and members of the Class are agents, in law or in fact, of Apple and are authorized to sell Apple's merchandise on Apple's behalf; (v) Apple has entered into

contracts with members of the Class in connection with the assurance of warranties; and (vi) Plaintiff and members of the Class are third-party beneficiaries of warranties that ran from Apple to its agents, the dealers and sellers of Apple products.

64.     As a result of the foregoing, Plaintiff and the Class members have suffered damages that were directly and proximately caused by the defective iPhone 4s.

65.     Moreover, upon information and belief, Apple acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to manufacture, warrant, and sell defective iPhone 4s and by providing wholly inadequate remedies to consumer complaints.

66.     Plaintiff and members of the Class have suffered harm and, absent extraordinary relief from this Court, Plaintiff will continue to suffer irreparable harm through Apple's conduct of continuing to market, warrant, and place defective iPhone 4s on the market.  Damages will not be an adequate remedy at law because, although Plaintiff has suffered injury, Apple continues to place its defective products on the market and provide wholly inadequate remedies to consumer complaints.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.     Awarding actual and consequential damages;

C.     Granting injunctive relief;

D.     For pre- and post-judgment interest to the Class, as allowed by law;

E.     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and/or non-pecuniary benefits are obtained on behalf of the Class; and

F.     Granting such other and further relief as is just and proper.

**COUNT IV**

**Breach of Implied Warranty**
**(Against Apple)**

67.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

68.     Apple impliedly represented and warranted that the iPhone 4s were free of defects, were merchantable, and were fit for their intended purpose.

69.     Apple breached these representations and implied warranties.  Apple made and/or allowed these misrepresentations to be made with the intent of inducing members of the Class to purchase iPhone 4s.  If Plaintiff and members of the Class had known the true facts regarding the defective condition of the iPhone 4s, they would not have purchased iPhone 4s or paid as much money for the iPhone 4s.

70.     By virtue of its knowledge of the defect and of the experience of purchasers and/or owner of the iPhone 4s who complained thereof, Apple has received notice of the breach of the warranties.

71.     The element of privity, if applicable, exists between Apple and members of the Class because, *inter alia*: (i) Apple has had direct written communications with members of the Class with regard to the iPhone 4s in the form of standardized warranty forms and registration cards; (ii) Apple has had direct communications with members of the Class with regard to the iPhone 4s through television, newspaper, and magazine advertisements; (iii) the Apple Retail Stores directly sold the iPhone 4s to the Class; and (iv) the AT&T dealers and AT&T's online website that have sold iPhone 4s to and communicated with Plaintiff and members of the Class are agents, in law or in fact, of Apple and are authorized to sell Apple's merchandise on Apple's behalf; (v) Apple has entered into contracts with members of the Class in connection with the assurance of warranties; and (vi) Plaintiff

and members of the Class are third-party beneficiaries of warranties that ran from Apple to its agents, the dealers and sellers of Apple products.

72.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the defective iPhone 4s.

73.     Moreover, upon information and belief, Apple acted and continues to act in an identical or substantially similar manner with respect to the entire putative Class by continuing to manufacture, warrant, and sell defective iPhone 4s and by providing wholly inadequate remedies to consumer complaints.

74.     Plaintiff and members of the Class have suffered harm and, absent extraordinary relief from this Court, Class members will continue to suffer irreparable harm through Apple's conduct of continuing to market, warrant, and place defective iPhone 4s on the market.  Damages will not be an adequate remedy at law because, although Plaintiff has suffered injury, Defendant continues to place its defective products on the market and provide wholly inadequate remedies to consumer complaints.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendant as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.     Awarding actual and consequential damages;

C.     Granting injunctive relief;

D.     For pre- and post-judgment interest to the Class, as allowed by law;

E.     For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary and/or non-pecuniary benefits are obtained on behalf of the Class; and

F.     Granting such other and further relief as is just and proper.

- 17 -

## COUNT V

### Violations of Florida's Unfair and Deceptive Trade Practices Act
### Fla. Stat. §§501.201, *et seq*.
### (Against Apple and AT&T)

75.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

76.     Plaintiff brings this claim pursuant to Florida's Unfair and Deceptive Trade Practices Act, Fla. Stat. §§501.201, *et seq*.

77.     At all relevant times, Defendants provided goods and/or services and thereby were engaged in trade or commerce, as defined by Fla. Stat. §501.203.

78.     At all relevant times, Plaintiff and the Class were consumers, as defined by Fla. Stat. §501.203.

79.     Defendants committed a deceptive and unfair trade practice of designing, manufacturing, marketing, and distributing the iPhone 4, which they knew or should have known was defective, but failed to disclose the defect.

80.     The fact that the iPhone 4 was defective and the nature of the defect are material in that such facts would likely affect a reasonable consumer's decision whether or not to buy the iPhone 4.

81.     Plaintiff and the Class were aggrieved and suffered losses as a result of Defendants' unfair or deceptive practices in that they purchased the iPhone 4s and contracted with AT&T for cellular telephone and other services when the iPhone 4 was defective and such fact was not disclosed.

82.     The actual damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

83.     Defendants' practice and course of conduct, as alleged herein, is likely to mislead a consumer acting reasonably in the circumstances, to the consumer's detriment.

84.     Further, Defendants have engaged in an unfair practice that offends established public policy, and is one that is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to customers.

85.     Upon information and belief, Defendants acted and continue to act in an identical or substantially similar manner with respect to the entire putative Class by adopting and implementing identical or substantially similar designing, manufacturing, marketing, and distributing of the iPhone 4 to consumers despite its defect.

86.     Plaintiff has retained the services of the undersigned attorneys who are entitled to a reasonable fee upon prevailing pursuant to Fla. Stat. §501.2105.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.     For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.     Awarding actual damages as provided by Fla. Stat. §501.211(2);

C.     Awarding injunctive relief as provided by Fla. Stat. §501.211(1);

D.     Awarding declaratory relief as provided by Fla. Stat. §501.211(1);

E.     For pre- and post-judgment interest to the Class, as allowed by law;

F.     For reasonable attorneys' fees and costs to counsel for the Class pursuant to Fla. Stat. §501.2105, and if and when pecuniary benefits are obtained on behalf of the Class; and

G.     Granting such other and further relief as is just and proper.

## COUNT VI

### Intentional Misrepresentation
### (Against Apple and AT&T)

87.     Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

88.     At all times herein referred to, Defendants were engaged in the business of designing, manufacturing, marketing, distributing, or selling the iPhone 4 units that are the subject of the instant litigation.

89.     Apple, acting through its officers, agents, servants, representatives, or employees, delivered the iPhone 4 units to their own retail stores, as well as AT&T retail stores, distributors, and various other distribution channels.

90.     Defendants willfully, falsely, and knowingly misrepresented material facts relating to the character and quality of the iPhone 4 units.

91.     In many of Defendants' text and video advertisements, releases and marketing materials, consumers were shown experiencing strong reception and positive performance while holding the Apple iPhone 4 in a normal manner, including placing the user's hand around the sides and bottom of the iPhone 4, and therefore making contact with the iPhone 4's antennas.

92.     Specifically, Defendants' text and video advertisements, releases, and marketing materials, showed the iPhone 4 units being used and held in a manner which causes the units to lose data and voice connectivity.

93.     Defendants' representations were made with the intent that the general public, including Plaintiff and Class members, would rely upon them.

94.     Defendants' representations were made with knowledge of the falsity of such statements, or in reckless disregard of the truth thereof.

95.     In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff purchased and used her iPhone 4.

96.     Defendants suppressed and failed to disclose the defects in the iPhone 4 (which were, on information and belief, known to Defendants prior to June 24, 2010.)

97.     If she had been aware of the suppressed facts, Plaintiff would not have purchased the defective iPhone 4.

98.     Upon information and belief, Defendants misrepresented material facts with the intent to defraud Plaintiff and the Class.

99.     Plaintiff was unaware of the intent of Defendants and reasonably relied upon the Defendants' misrepresentations in agreeing to purchase the iPhone 4.

100.    In actual and reasonable reliance upon Defendants' misrepresentations, Plaintiff purchased the defective iPhone 4 and used it in the way in which it was intended.

101.    Plaintiff was harmed as a direct and proximate result of Defendants' intentional misrepresentations.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.      Awarding actual and consequential damages;

C.      Granting injunctive relief;

D.      For pre- and post-judgment interest to the Class, as allowed by law;

E.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

F.      Granting such other and further relief as is just and proper.

## COUNT VII

### Negligent Misrepresentation
### (Against Apple and AT&T)

102.    Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.

103.    Defendants negligently and recklessly misrepresented various material facts regarding the quality and character of their product, under circumstances where Defendants either knew or reasonably should have known that the representations were not true.  These misrepresentations were contained in various advertising, packaging, and correspondence from Defendants, and such misrepresentations were further reiterated and disseminated by the officers, agents, representatives, servants, or employees of Defendants acting within the scope of their authority.

104.    In reliance upon these misrepresentations, Plaintiffs purchased the iPhone 4 for use as a wireless communication device.

105.    Had Plaintiff known of the defective design and/or manufacture of the iPhone 4, she would not have purchased the iPhone 4 from Defendants.

106.    As a direct and proximate consequence of Defendants' negligent misrepresentations, Plaintiff has been injured.

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against Defendants as follows:

A.      For an order certifying the Class under the appropriate provisions of Rule 23, as well as any appropriate subclasses, and appointing Plaintiff and her legal counsel to represent the Class;

B.      Awarding actual and consequential damages;

C.      Granting injunctive relief;

D.      For pre- and post-judgment interest to the Class, as allowed by law;

E.      For reasonable attorneys' fees and costs to counsel for the Class if and when pecuniary benefits are obtained on behalf of the Class; and

107.    Granting such other and further relief as is just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff, on behalf of herself and all others similarly situated, hereby demands a jury trial on all issues so triable.

DATED:  July 2, 2010                        ROBBINS GELLER RUDMAN & DOWD LLP
                                            STUART A. DAVIDSON
                                            Florida Bar No. 084824
                                            CULLIN A. O'BRIEN
                                            Florida Bar No. 597341
                                            MARK DEARMAN
                                            Florida Bar No. 0982407


                                                    *s/ Stuart A. Davidson*
                                            _____
                                                 STUART A. DAVIDSON

                                            120 E. Palmetto Park Road, Suite 500
                                            Boca Raton, FL  33432
                                            Telephone:  561/750-3000
                                            561/750-3364 (fax)
                                            sdavidson@rgrdlaw.com
                                            cobrien@rgrdlaw.com
                                            mdearman@rgrdlaw.com

FARMER, JAFFE, WEISSING, EDWARDS,
FISTOS & LEHRMAN, P.L.
STEVEN R. JAFFE
Florida Bar No. 390770
SETH M. LEHRMAN
Florida Bar No. 132896
MARK FISTOS
Florida Bar No. 909191
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone:  954/524-2820
954/524-2822 (fax)
steve@pathtojustice.com
seth@pathtojustice.com
mark@pathtojustice.com

Attorneys for Plaintiff and the Class